UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER L. BATES,

     Plaintiff,

v.                         CASE No. 8:11-CV-956-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

ORDER

     The plaintiff in this case seeks judicial review of the denial of

her claim for Social Security disability benefits.[1] Because the decision of the

Commissioner of Social Security is supported by substantial evidence and the

plaintiff has not shown any reversible error, the decision will be affirmed.

I.

     The plaintiff, who was thirty-seven years old at the time of the

administrative hearing and who has some college education, has worked as

an office manager, a technical support analyst, and a cashier (Tr. 24-25, 66-

---

     [1]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 15).

67). She filed a claim for Social Security disability benefits, alleging she became disabled due to fibromyalgia, migraines, and stress/depression (Tr. 236). Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of fibromyalgia, obesity, depression, and anxiety (Tr. 86). He concluded that, with these impairments, the plaintiff has the residual functional capacity to perform medium work with a restriction of "only occasional 'communication about the job' with the general public" (Tr. 89). The law judge decided that these limitations prevented the plaintiff from returning to her past relevant work (Tr. 93). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as the medium exertional occupations of dining room attendant and kitchen helper, the light exertional occupations of electronics worker and weigher/checker, and the sedentary exertional occupation of optical goods final assembler (Tr. 93-94). The law judge therefore ruled that the plaintiff

was not disabled (Tr. 94-95). The Appeals Council let the decision stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact

made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on three grounds. None of these contentions warrants reversal.

A. The plaintiff first argues that the law judge's residual functional capacity assessment that she could perform medium work is not supported by substantial evidence (Doc. 16, pp. 12-14). This assertion does not demonstrate reversible error.

The primary focus of this contention is the plaintiff's fibromyalgia. The law judge recognized that the plaintiff suffers from fibromyalgia and, in fact, found that the condition was a severe impairment.

"Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues." <u>Heppell-Libsansky</u> v. <u>Commissioner of Social Security</u>, 170 Fed. Appx. 693, 695 n.1 (11th Cir. 2006). The Eleventh Circuit has noted that the hallmark of fibromyalgia is a lack of objective evidence. <u>Moore</u> v. <u>Barnhart</u>, 405 F.3d 1208, 1211 (11th

Cir. 2005). As explained in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.

1996):

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

The court added that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working ..., but most do not." Id. at 307.

The plaintiff asserts that her "diagnosis of fibromyalgia and the pain that she suffers from would not allow her to perform work at [a medium] level" (Doc. 16, p. 13). In order to prevail, however, the plaintiff must show that she had functional limitations from this condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely

-6-

medical standards of bodily perfection or normality' is insufficient; instead,

the claimant must show the effect of the impairment on her ability to work."

Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting

McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words,

it is the functional limitations that determine disability. Moore v. Barnhart,

supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra. Here, the plaintiff

makes no effort to show how her fibromyalgia creates a specific functional

limitation beyond the law judge's residual functional capacity. Rather, she

merely asserts that "[i]t is difficult to imagine someone with severe

fibromyalgia lifting up to 50 pounds occasionally and 25 pounds frequently

throughout the day, or being on her feet standing and/or walking for 6 out of

8 hours" (Doc. 16, p. 13). However, there was no opinion in the record

before the law judge from a treating or examining doctor that supports that

assertion.

There was an opinion from a treating physician, Dr. Frank

Perrine, who is an internist with a specialty in sleeping disorders, submitted

to the Appeals Council that indicated that the plaintiff had incapacitating

functional limitations (Tr. 789-91). That opinion, however, is not to be

considered when determining whether the law judge's decision is supported

by substantial evidence since it was not presented to the law judge. <u>Falge</u> v.

<u>Apfel</u>, 150 F.3d 1320, 1323 (11th Cir. 1998). Accordingly, the plaintiff does

not even mention Dr. Perrine's opinion in her argument.[2]

Not only was there no opinion from a treating or examining

doctor that the plaintiff was unable to perform medium exertional work, but

there was an opinion from a nonexamining reviewing doctor that she could.

Thus, Dr. Gary Cater opined that the plaintiff had the ability to lift and carry

---

Conceivably, the plaintiff might have made an argument under <u>Ingram</u> v.
<u>Commissioner of Social Security Administration</u>, 496 F.3d 1253 (11th Cir. 2007), that, in
light of new evidence submitted to the Appeals Council, the Appeals Council, in denying
review, erred in concluding that law judge's findings are not contrary to the weight of all
the evidence. However, no such contention was made, and thus, in view of the scheduling
Order (Doc. 14, p. 2), that argument is deemed abandoned.

The failure to raise an <u>Ingram</u> contention does not appear to have been an oversight.
The new evidence, in general, indicates that the plaintiff's physical and mental conditions
have improved, and that the plaintiff has greatly lost weight down to 154 pounds (Tr. 781).

Moreover, Dr. Perrine's conclusory opinions would not likely receive any weight
from the law judge. For example, there is no basis for thinking that the plaintiff could only
sit for one-half hour in an eight-hour day (Tr. 790). That opinion is plainly unsupported by
the record. Moreover, his opinion on the plaintiff's mental status is clearly outside his
expertise (Tr. 792). Further, he opined that the plaintiff had an "unlimited" ability to
"[u]nderstand, remember, and carry out complex job instructions," but had a "poor" ability
to "[u]nderstand, remember and carry out simple job instructions" (Tr. 793). These
illogical opinions indicate a lack of attention to the forms he submitted. In all events, the
plaintiff made no attempt to rely upon Dr. Perrine's opinions.

fifty pounds occasionally and twenty-five pounds frequently, and the ability

to stand or walk for six hours in an eight-hour work day (Tr. 681).

In support of her contention, the plaintiff notes that Dr. Violet

Acero Stone, another nonexamining reviewing doctor, opined that the

plaintiff could only perform work at the light level of exertion (Doc. 16, p.

13). In this respect, Dr. Acero Stone opined that the plaintiff was limited to

lifting and carrying twenty pounds occasionally and ten pounds frequently,

and was capable of walking and standing for six hours in an eight-hour work

day (Tr. 613). However, as the law judge discussed in his decision, he

afforded greater weight to Dr. Cater's assessment of medium work "because

it is more consistent with the opinions and records of the doctors who had the

benefit of actually examining the claimant and with the evidence as a whole"

(Tr. 92). In her argument on this point, the plaintiff does not point to any

evidence in the record that compels a finding contrary to Dr. Cater's, and the

law judge's, assessment (see Doc. 16, p. 13).

Furthermore, even if Dr. Acero Stone's opinion were accepted,

the plaintiff could not demonstrate reversible error. Thus, as the law judge

pointed out in his decision, the vocational expert indicated light work jobs

that the plaintiff could perform consistent with Dr. Acero Stone's assessment (Tr. 94). In fact, the expert identified a sedentary job that would defeat the plaintiff's claim, even if, as the plaintiff asserts, she could not stand and walk for six hours in an eight-hour workday (id.).

Turning to the plaintiff's mental status, the plaintiff asserts that the law judge should have found that the plaintiff had a moderate limitation in concentration, persistence, or pace (Doc. 16, pp. 13-14). The law judge, however, found that the plaintiff's limitation in that area of functioning was only mild (Tr. 87). Thus, the law judge explained (id.):

> With respect to concentration, persistence, or pace, the claimant and [her husband], in forms completed in June 2006 and July 2007, stated that the claimant could drive, shop, use a computer, manage her money, and read, as well as follow written instructions and handle changes in routine (Exhibits 5E, 7E, 11E, and 12E). In July 2006, Dr. [R.] Salari also found the claimant with a good memory (Exhibit 7F). In July 2006, Dr. [David] Zelbovitz further found the claimant with logical thought processes (Exhibit 8F). Moreover, in July 2006, Dr. [Robin] Wooten found the claimant with intact cognitive functions, no memory impairment, and no underlying thought disorder (Exhibit 13F/6-8). In addition, at the hearing, the claimant testified that she could drive prior to December 13,

2008, shop, use a computer, manage her money,
read books occasionally, and watch television.

The finding that the plaintiff had a mild limitation in concentration, persistence, or pace is reasonable, and, as the law judge indicated, it is supported by the evidence in the record.

The plaintiff has not cited any evidence in the record that compels a finding that the plaintiff had moderate limitations in concentration, persistence, or pace. Thus, the plaintiff points to notes from doctors indicating that the plaintiff had trouble concentrating and short term memory problems (Doc. 16, p. 13). However, as the Commissioner correctly responds, these comments were merely a recitation of the plaintiff's subjective complaints rather than independent assessments by the doctors themselves (Doc. 18, pp. 8-9). Significantly, the law judge found that the plaintiff's subjective complaints were not credible to the extent that they were inconsistent with his determination of the plaintiff's residual functional capacity (Tr. 91), and the plaintiff has not challenged that credibility finding.

Moreover, as the Commissioner notes (Doc. 18, p. 9), the law judge's finding that the plaintiff had only a mild limitation in concentration,

persistence, or pace is supported by the records of Dr. Wooten and Dr. Michael L. Kieffer. In September 2006, Dr. Kieffer reported "no obvious sign of memory disturbance or thought disorder" (Tr. 757). Dr. Kieffer's treatment notes from September 2008 indicate that the plaintiff was articulate, and her speech was logical and goal directed (Tr. 764). Similarly, Dr. Wooten, in July 2006, noted (Tr. 674):

> The patient was neatly and appropriately dressed and was alert, oriented, and cooperative. She spoke logically and coherently, and there was no evidence of an underlying thinking disorder. Her affect was generally appropriate. Her cognitive functions were intact and there was no obvious impairment of recent or remote memory.

Pointing to her Global Assessment of Functioning ("GAF") scores, the plaintiff argues further that the law judge should have found that she had moderate difficulties in the area of concentration, persistence, or pace (Doc. 16, pp. 13-14). In 2006, Dr. Wooten and Dr. Kieffer assessed the plaintiff with GAF scores of 60 (Tr. 674, 777). Subsequently, in September 2008, Dr. Kieffer reported that the plaintiff's current GAF range was 59-65 (Tr. 765).

The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers") (id.). The Commissioner has declined to endorse the use of GAF scores in disability determinations. Wind v. Barnhart, supra, 133 Fed. Appx. at 692 n.5.

The GAF scores, consequently, do not provide meaningful support that the plaintiff has moderate limitations in concentration, persistence, or pace. In the first place, scores of 59 and 60 are on the cusp of only mild limitations. Moreover, those broad scores do not say anything in particular about the plaintiff's concentration, persistence, or pace. That is particularly true here where the scores may simply reflect the moderate limitations found by the law judge in social functioning.

The evidence therefore does not compel a finding that the plaintiff had moderate, not mild, limitations in concentration, persistence, or

pace. Accordingly, the law judge's determination of the plaintiff's residual functional capacity is not flawed because it does not contain such a limitation.

Finally, the plaintiff cursorily suggests that the law judge erred by not including limitations from headaches in the residual functional capacity (Doc. 16, p. 14). The law judge, however, considered the plaintiff's subjective complaints about headaches, but discounted them. Thus, he stated (Tr. 90):

> The claimant testified that she was impaired by migraine headaches, occurring 6 times a week, and lasting half a day. In September 2008, Dr. [David H.] Sikes, however, noted that the claimant had muscle tension headaches rather than migraine headaches (Exhibit 16F/7-9). However, in July 2006, Dr. Salari noted that the claimant's headaches had improved since she stopped taking birth control pills (Exhibit 7F). The medical evidence also fails to show significant treatment, such as hospitalization or emergency care, for the claimant's headaches since the alleged onset of disability.

The plaintiff has not made any challenge to this credibility finding (Doc. 16, p. 14).

Having discounted the plaintiff's complaints of headaches the law judge did not find that the headaches constituted a severe impairment (see

Tr. 86). This means that headaches did not significantly limit the plaintiff's ability to do basic work activities. See 20 C.F.R. 404.1521(a). Therefore, there would be no functional limitations from headaches to be included in the plaintiff's residual functional capacity.

B. Next, the plaintiff contends that the law judge erred regarding his evaluation of the opinion of Dr. Kieffer, the plaintiff's treating psychologist (Doc. 16, pp. 14-19). This argument is unpersuasive.

In October 2008, Dr. Kieffer completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" (Tr. 742-44). In this document, Dr. Kieffer indicated that the plaintiff had an unlimited ability to follow work rules; a good ability to use judgment; a fair to good ability to interact with supervisors; a poor to fair ability to relate to co-workers, deal with the public, and deal with stresses; and a fair ability to maintain attention/concentration (Tr. 742). Dr. Kieffer also reported that the plaintiff has a good ability to understand, remember, and carry out complex job instructions (Tr. 743). With respect to making personal social adjustments, Dr. Kieffer concluded that the plaintiff had a good ability to maintain personal appearance and demonstrate reliability, and a poor to fair

ability to behave in an emotionally stable manner and relate predictably in

social situations (id.). He stated that the plaintiff's depression interfered with

her concentration, motivation, mood, and ability to get along with others (id.).

Finally, Dr. Kieffer opined that the plaintiff's "employability was

questionable before depression developed, and is worse since the depression"

(id.).

With respect to the opinion of Dr. Kieffer, the law judge stated

(Tr. 92):

> In October 2008, a medical source statement
> completed by Dr. Kieffer reflected that the
> claimant was mentally unable to perform
> competitive work on a sustained basis, opining that
> she had good abilities to understand, remember,
> and carry out instructions, but poor abilities to
> interact with others and behave in an emotionally
> stable manner (Exhibit 19F/2-4). However, this
> opinion is not accorded controlling weight because
> opinions on the issues of whether the claimant is
> "disabled" or "unable to work" are reserved to the
> Commissioner because they are administrative
> findings that are dispositive of a case (20 CFR
> 404.1527(e) and SSR 96-5p). Moreover, this
> opinion is inconsistent with Dr. Kieffer's own
> treatment notes, as well as with the evidence as a
> whole (as set forth below).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The plaintiff argues that, "[a]lthough Dr. Kieffer did state in his narrative that [the plaintiff] had tried to work and was unable to, the vast majority of his opinion centered on her work abilities, not on the ultimate question of whether she could work" (Doc. 16, p. 16).

However, Dr. Kieffer did opine that the plaintiff's "employability was questionable before depression developed, and is worse since the depression," and the plaintiff "has tried to work but has been unable" (Tr. 742-44). The law judge correctly noted that the issue of whether a claimant is disabled is reserved to the Commissioner under the regulations. 20 C.F.R. 404.1527(d); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007). Furthermore, Dr. Kieffer's statement that the plaintiff's

"employability was questionable before depression developed" is a matter beyond his expertise. And, his assertion that it "is worse since the depression" is undermined by his unsupported predicate.

The plaintiff contends that, contrary to the law judge's determination, Dr. Kieffer's opinion is consistent with his treatment notes (Doc. 16, pp. 16-18). In this regard, the plaintiff points to Dr. Kieffer's various notes indicating issues with irritability, depression, and memory and concentration problems. However, as the Commissioner points out, this evidence primarily consists of the plaintiff's subjective complaints, rather than Dr. Kieffer's independent assessments of her functioning and limitations (Doc. 18, p. 14).

Moreover, the law judge correctly concluded that the opinion of Dr. Kieffer was inconsistent with his own findings. In the first place, the opinions of mental incapacity are contrary to Dr. Kieffer's GAF scores. Thus, he assessed a GAF score of 60 in September 2006, which is on the border between moderate and mild limitations (Tr. 678). In September 2008, Dr. Kieffer assigned a GAF range of 59-65, which reaches to the middle of mild

limitations (Tr. 746). Those scores do not support a finding of mental disability.

In addition, Dr. Kieffer opined on the form that the plaintiff's "depression interferes with [her] concentration, motivation, mood (irritable and depressed), and ability to get along with others" (Tr. 743). However, as the law judge noted, "in September 2006, Dr. Kieffer found the claimant with teary eyes and a depressed mood, but logical and goal-directed speech, laughter a few times, and no obvious sign of a memory disturbance or a thought disorder" (Tr. 92). Similar findings were reported by Dr. Kieffer in September 2008 (Tr. 764).

The plaintiff also argues that Dr. Kieffer's opinion was consistent with the findings of Dr. Wooten, who indicated that the plaintiff had difficulty working part-time due to her lack of motivation (Doc. 16, p. 17). Of course, lack of motivation cannot provide a basis for a finding of disability. In addition, the plaintiff fails to note that Dr. Wooten also found the plaintiff "to be cooperative, and with a generally appropriate affect, intact cognitive functions, logical and coherent speech, no memory impairment, and no underlying thought disorder" (Tr. 92).

There is, moreover, additional evidence supporting the law judge's determination of the plaintiff's mental limitations. Thus, after performing a mental status examination, Dr. Zelbovitz, a licensed psychologist, indicated that the plaintiff was cooperative and oriented, had logical and alert thought processes, her concentration was good, and her short and long-term memory was intact (Tr. 611).

In a cursory manner, the plaintiff contends that the opinions of nonexamining, reviewing psychologists cannot be used as a basis to reject Dr. Kieffer's opinion (Doc. 16, p. 18). In fact, they were not.

Dr. Pamela Green and Dr. Catharina Eeltink, reviewing psychologists, opined that the plaintiff's mental impairments were not severe, and she had only mild restrictions in the areas of activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 620-33, 688-701). However, when discussing the opinions of Dr. Green and Dr. Eeltink, the law judge explained that they "are weighed as statements from non-examining expert sources. Greater weight is afforded to the records of the doctors who had the benefit of actually examining the claimant" (Tr. 87). Significantly, the law judge's finding regarding the plaintiff's difficulties with

social functioning was more limiting than those of the reviewing psychologists (Tr. 86, 87).

Finally, the plaintiff asserts that the law judge did not specify the weight he accorded to the opinion of Dr. Kieffer (Doc. 16, pp. 18-19). The law judge, however, expressly said that he would not give Dr. Kieffer's opinion controlling weight (Tr. 92). Nevertheless, he made some findings consistent with Dr. Kieffer's opinions. Thus, he found that the plaintiff had moderate difficulties in social functioning (Tr. 87). Accordingly, he concluded that the plaintiff was restricted to employment where she had only occasional communication about the job with the general public (Tr. 89).

In sum, the law judge considered Dr. Kieffer's opinions and gave good cause for discounting them to some extent. Therefore, this challenge fails.

C. For her final issue, the plaintiff argues that the law judge's "treatment of fibromyalgia in this case was improper and shows bias" (Doc. 16, p. 19). This contention is baseless.

As indicated, the symptoms of fibromyalgia are subjective, so that it cannot be diagnosed by objective findings. Accordingly, a law judge

would err if he rejected a claim of fibromyalgia because there were no objective findings. The law judge in this case did not make such a mistake.

The law judge found that the plaintiff suffered from fibromyalgia and that it was a severe impairment. Moreover, he gave no indication in the decision that he was discounting the plaintiff's impairment due to a lack of objective findings.

The plaintiff argues that the law judge's misunderstanding of fibromyalgia is reflected by his statement at the administrative hearing that fibromyalgia is a "condition," and that whether it is classified as a disease is "highly disputed" (id., pp. 20-21). As the Commissioner persuasively asserts, this statement "actually shows the ALJ's grasp of the vagaries of fibromyalgia and his familiarity with it, contrary to Plaintiff's argument that it indicates some type of disbelief in fibromyalgia" (Doc. 18, p. 17). In other words, the law judge was merely noting that there is a disagreement whether fibromyalgia is a disease, or a condition. Indeed, even the Eleventh Circuit has referred to fibromyalgia as a "condition." See Heppell-Libsansky v. Commissioner of Social Security, supra, 170 Fed. Appx. at 695 n.1.

Moreover, the law judge stated at the hearing "that fibromyalgia and depression are almost always tied together" (Tr. 39). This demonstrates not only that the law judge recognized fibromyalgia as an impairment, but that he also recognized that it had a mental component. The law judge accordingly found that the plaintiff had a severe impairment of depression.

The plaintiff contends further that the law judge is biased against her (Doc. 16, pp. 21-22). In support of this contention, the plaintiff points to the law judge's comments at the administrative hearing about a television program, his use of hand gestures to indicate quotation marks when referencing fibromyalgia, his 2008 statement to National Public Radio, and his statement that the plaintiff's hypersomnia was "only idiopathic" (id.). This contention is frivolous.

A reading of the transcript of the hearing reveals that the law judge was pleasant and unhurried. His approach compares favorably to many, if not most, of the hundreds of transcripts I have read. At one point, the law judge discussed light-heartedly with the plaintiff the difficulty in reading the author Dean Koontz's books (Tr. 53). In fact, on February 4, 2009, the plaintiff told Dr. Kieffer, her psychologist, that her "SSI hearing ... seemed

to go well, as she and the judge actually had some intelligent conversations about unrelated matters" (Tr. 785).

The plaintiff also complains that in 2008 the administrative law judge, in a statement to National Public Radio, made comments criticizing the Social Security program (Tr. 322-24). The law judge's statement, however, does not support the plaintiff's contention that the law judge was biased against her in deciding this case. The statement does not pertain to the plaintiff or the nature of her claims. The same claim of bias based on the law judge's statement has been rejected by other courts. See Brandt v. Astrue, 2010 WL 746446 at *12 (M.D. Fla.); Luu v. Astrue, 2009 WL 2462571 at **4-5 (W.D. Pa.).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this

Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 13th day of July,

2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE